UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00169

MARIO LUIS GONZALEZ PLIEGO,                                            Petitioner

v.

AMANDA LEIGH HAYES,                                                    Respondent

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon two motions. Petitioner Mario Luis Gonzalez Pliego has filed a Motion in Limine to Exclude John Higgins. (Docket No. 26; Docket No. 27). Respondent Amanda Leigh Hayes has responded, Docket No. 39, and Petitioner has replied, Docket No. 42. Second, Petitioner Pliego has filed a Motion in Limine to Exclude Ann Guler. (Docket No. 28; Docket No. 29). Respondent Hayes has responded, Docket No. 38, and Petitioner has replied, Docket No. 43. These matters are now fully briefed and ripe for adjudication. For the following reasons Petitioner's Motion in Limine to Exclude John Higgins is **GRANTED IN PART** and **DENIED IN PART** and Petitioner's Motion in Limine to Exclude Ann Guler is **GRANTED IN PART** and **DENIED IN PART.**

### BACKGROUND

This litigation originated when Pliego filed suit under The International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610 (2000), codifies the Hague Convention on the Civil Aspects of International Child Abduction. The Hague Convention was adopted by the signatory nations "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the

1

State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, pmbl.

Amanda Leigh Hayes and Mario Luis Gonzales Pliego were married on July 11, 2009 in Spain. Their child, ALG, was born in 2011 and is three years old. Hayes is a citizen of the United States, and Pliego is a citizen of Spain. Hayes has filed for divorce and custody in Kentucky, while Pliego has filed for divorce and custody in Spain. Pliego is a career diplomat at the Spanish Embassy and as such, the family has lived in different countries during ALG's lifetime. They lived in Jakarta, Indonesia until July 2012 when they moved to Ankara, Turkey. Pliego is currently still living in Ankara. Hayes and Pliego agreed that Hayes and ALG would travel to Kentucky to visit extended family on April 6, 2014. The date of return was to be May 4, 2014. Instead, Hayes told Pliego that she would not be returning and intended to keep ALG with her in Kentucky. Currently, Hayes and ALG are residing in Kentucky pending resolution of this action, subject to agreed conditions. Docket No. 18.

## DISCUSSION

Pliego has filed motions seeking to exclude the testimony of two proposed witnesses: John Higgins, based on the standard for admissibility of expert testimony, and Ann Guler, based on the psychotherapist-privilege.

### I. Motion in Limine to Exclude John Higgins as an Expert

#### a. Standard

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

2

  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702.

  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001)) (applying *Daubert*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999)).  In performing its gatekeeping function, the Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." *Id.* at 592–93.  The Supreme Court advises that the inquiry is "a flexible one," and that "[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 594–95.  A testifying expert must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

  While there is no "definitive checklist or test" for meeting the standard of Rule 702, *Daubert* laid out a number of factors that typically "bear on the inquiry," including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94.  Although *Daubert* addressed scientific evidence, the Supreme Court in *Kumho Tire Co. v. Carmichael* held that a trial court may consider the *Daubert* factors for all types of expert evidence.  *Kumho Tire*, 526 U.S. at 150.  Thus, the *Daubert* factors are

nonexhaustive and may not be pertinent in cases where "the relevant reliability concerns ... focus upon personal knowledge or experience." *Id.*; *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

The Sixth Circuit has developed further guidance on Rule 702 by recently outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177).

However, the court in *Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004) held that "[t]he gatekeeper doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial. *Id.* at 851-52. "[A]lthough all ... experts must pass *Daubert* scrutiny before the Court may rely on their testimony to find in [the Plaintiff's] favor, the 'usual concerns' about shielding the jury from unreliable expert testimony 'obviously do not arise' in a bench trial." *Douglas v. United States*, No., 2011 WL 2633612, at *6 (E.D.Ky. July 5, 2011). The Court has broad discretion in determining whether to admit expert testimony, and "[t]his discretion is particularly broad in a bench trial." *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir.2004).

### b. Respondent's expert John Higgins

John Higgins is a parish priest at The Church of St. Nicolas of Myra in Cankaya, Ankara. Docket No. 15-2. He holds a Certificate of Qualification in Social Work from the University of Central England in 1975 and a Social Science Ph. D. from the University of Birmingham, England from 2007. *Id.* He worked as a Guardian *ad litem* for the courts of Staffordshire from

4

1981-1990 and the county of Cumbria from 1991-2000. *Id.* Hayes regularly attended the St. Nicolas Church and taught Sunday School there for approximately two years, beginning in April 2011. During this time, she met with Higgins for pastoral support and spiritual guidance. *Id.* Additionally, Hayes allegedly showed him bruises that she claimed resulted from domestic violence. *Id.*

Pliego objects to allowing Higgins testify as an expert. Specifically, Pliego objects to the following areas of proposed testimony: "1) general knowledge about bruising and domestic violence; 2) Turkish and American domestic law; and 3) diplomatic family relations." Docket No. 27. In support, Pliego argues that Higgins is unqualified to testify as an expert, and that he is operating from a limited basis of fact – namely, that the majority of his information is based on statements that Hayes made. Hayes responds that Higgins has twenty years of experience working with victims of domestic violence, and that his opinions "concerning the stresses that diplomatic families face, as well as his opinions concerning the cultural environment of Turkey concerning domestic violence" satisfy *Daubert* as they are based on his experience in Turkey and his church's location at the British embassy. Docket No. 39. Hayes further notes that the usual concerns regarding prejudice to the jury are not present as this is a bench trial, and asks the Court to pass on any final ruling until later in these proceedings. *Id.*

In regards to the allegations of domestic violence, Higgins states that his "substantial experience in this field over many years suggests that the bruises were not in a place in which they could have easily been self-inflicted, so I found no reason to take issue with [Hayes's] explanation." Docket No. 15-2. However, Higgins does not have the relevant education or experience, medical or otherwise, needed to opine about the cause of the bruising, or to determine that the bruising could not have been self-inflicted. Nor has he demonstrated use of

5

any reliable methodology for determining the cause of the bruises. Therefore, the Court will permit Higgins to testify regarding the bruises that he saw, but not about their cause.

As for the testimony regarding Turkish and American domestic law and diplomatic family relations, the Court is skeptical of the relevancy of this testimony. At this time, the Court will wait on the submission of Higgins's deposition before determining the scope of his testimony on this subject.

## II.     Motion in Limine to Exclude Ann Guler based on the Psychotherapist-Privilege

### a.  Standard

The Federal Rules of Evidence establish that "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." *See* Fed. R. Evid. 501. The United States Supreme Court recognizes a psychotherapist-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996). Specifically, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure . . . ." *See id*. at 15. The Supreme Court based its holding on a combination of the significant private interest in effective psychotherapy, the significant public interest in the "mental health of our citizenry," and the modest evidentiary benefit of denying a psychotherapist-patient privilege. *See id*. at 11. The Court rejected a "balancing component ... [m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure." *Id*. at 17.

Prior to *Jaffee*, the Sixth Circuit had recognized the privilege in *In re Zuniga*, 714 F.2d 632 (6th Cir. 1983). In discussing waiver, the Circuit has held that "placing one's mental health

at issue constitutes waiver of the privilege." *Simon c. Cook*, 261 Fed. Appx. 873, 885 (6th Cir. 2008).

### b. Respondent's Psychotherapist Dr. Guler Ann Gerger

Dr. Guler Ann Gerger is a psychologist who counselled Hayes in Ankara, Turkey and telephonically after Hayes returned to Kentucky. Docket No. 15-1. The two had at least 38 counselling sessions together, starting in January of 2013. *Id.* Of those sessions, Pliego attended 14, starting in June 19, 2013, "for the purpose of addressing and remediating issues raised in Amanda's counseling regarding parent conflict and violence." *Id.*

Pliego argues that Guler cannot disclose communications made between her and her patients unless all involved patients waive the privilege. Docket No. 29. He argues that he was a patient and that he participated fully in 14 sessions. *Id.* There is little law directly addressing the issue of the psychotherapist-privilege in the context of joint counseling or marriage counseling, but Pliego cites to a case applying Oklahoma state law on privilege. *Id.*; *Hulsey v. Stotts, Barclay, Pettus, Moore, Whipple & Dugan*, 155 F.R.D. 676 (N.D. Okla. 1994). In *Husley*, the court held that Oklahoma's patient-psychotherapist privilege extended not only to joint counseling sessions but individual sessions arising out of same course of treatment. *Id.* The court noted that:

> The psychiatrist-patient privilege is not diminished by the fact that the patient sought or contemplated treatment jointly with other persons, or primarily for the benefit of another person who is in treatment by the same psychiatrist. The object of the privilege is to encourage the full trust of the patient so as to persuade him to reveal his innermost feelings and private acts so that the psychiatrist may give the most effective treatment ... The strongest public policy considerations militate against allowing a psychiatrist to encourage a person to participate in joint therapy, to obtain his trust and extract all his confidences and place him the most vulnerable position, and then abandon him on the trash heap of lost privilege.

*Id.* at 677 (citing *Mrozinski v. Pogue*, 434 S.E. 2d 405 (Ga. App. 1992).

7

In response, Hayes argues first that Gerger was never Pliego's therapist and thus they never had a therapist-patient relationship. Docket No. 38. She notes that: 1) all bills were in her name; 2) she scheduled and attended all appointments, plus an additional 18 sessions after moving to Kentucky; 3) Gerger invited Pliego because she "always prefers to meet family members"; 4) couples in joint marital counseling with Gerger usually start the process together; 5) Gerger protected the privacy of Hayes's sessions; and 6) Gerger did not gather any information regarding Pliego's mental health or background. *Id.* Further, Hayes argues that the court should apply law regarding the lawyer-client privilege, and hold that the psychotherapist-privilege does not apply in litigation between the same parties who participated in joint sessions. *Id.* Finally, she notes that the majority of the testimony will be in regards to Hayes's solo sessions, and that that testimony should be admitted.

To be protected from compelled disclosure, a statement must be a confidential communication, between a licensed psychotherapist and her patient, made in the course of diagnosis or treatment. *Jaffee,* 518 U.S. at 15; *United States v. Landor*, 699 F. Supp. 2d 913 (E.D. Ky. 2009) (finding communications in the holding cell of a prison confidential because they were intended as such); *United States v. Hardy*, 640 F. Supp. 2d 75 (including threats made at a mental health facility as being "in the course of diagnosis or treatment" and rejecting the government's narrow interpretation of the privilege). There is no dispute that Gerger is a licensed psychotherapist or that the communications between the parties were confidential. The Court finds that Pliego was a participant in the sessions, and that his statements were made in the court of diagnosis or treatment. Although Hayes scheduled and paid for all sessions, Pliego appears to have participated fully when he was present. This is evidenced by the multiple personal statements he made, as noted in Gerger's Sworn Statement. Docket No. 15-1. In fact,

8

Gerger describes his presence in the sessions as being intended to address and remediate conflict and violence in the relationship between the parties. Docket 15-1. Therefore, the Court holds that the psychotherapist-privilege applies to the statements Pliego made during counseling sessions with Gerber.

Next, Hayes argues that the privilege is waived because the litigation is between the parties who participated in the joint sessions. Docket No. 38. She argues that the court should apply the law of attorney-client privilege to the psychotherapist privilege. *Id.* Hayes points to no law utilizing the attorney-client privilege in this factual circumstance, and the Court declines to do so here. It is true that there are some similarities between the two privileges. In *Jaffee*, the Supreme Court noted that, "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." 518 U.S. at 10. However, the Court also noted the different "public ends" served by different privileges, describing the importance of the psychotherapist-privilege for the "mental health of our citizenry." *Id.* The reasoning of *Husley* is also instructive here: "The strongest public policy considerations militate against allowing a psychiatrist to encourage a person to participate in joint therapy, to obtain his trust and extract all his confidences and place him the most vulnerable position, and then abandon him on the trash heap of lost privilege." *Hulsey*, 155 F.R.D. at 677. It would not serve the "public ends" as articulated in *Jaffee* and *Husley* to deny Pliego access to the psychotherapist-privilege after he was encouraged to participate in joint counseling, merely because he is litigating against his wife.

Accordingly, the Court holds that Guler may testify as to statements made by Hayes, but not as to any statements made by Pliego.

9

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Petitioner's Motion in Limine to Exclude John Higgins, Docket No. 26, is **GRANTED IN PART** and **DENIED IN PART** and Petitioner's Motion in Limine to Exclude Ann Guler, Docket No. 28, is **GRANTED IN PART** and **DENIED IN PART.**