UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-00169

MARIO LUIS GONZALEZ PLIEGO,                                               Petitioner

v.

AMANDA LEIGH HAYES,                                                       Respondent

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Respondent Amanda Leigh Hayes's Motion for Summary Judgment. (Docket No. 25). Petitioner Mario Luis Gonzalez Pliego has responded, Docket No. 36. These matters are now fully briefed and ripe for adjudication. For the following reasons, Respondent's motion for Summary Judgment is **DENIED**.

### BACKGROUND

This litigation originated when Pliego filed suit under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610 (2000). The Hague Convention was adopted by the signatory nations "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, pmbl.

Amanda Leigh Hayes and Mario Luis Gonzales Pliego were married on July 11, 2009 in Spain. Their child, ALG, was born in 2011 and is three years old. Hayes is a citizen of the United States, and Pliego is a citizen of Spain. Hayes has filed for divorce and custody in

1

Kentucky, while Pliego has filed for divorce and custody in Spain. Pliego is a career diplomat at the Spanish Embassy and as such, the family has lived in different countries during ALG's lifetime. They lived in Jakarta, Indonesia until July 2012 when they moved to Ankara, Turkey. Pliego is currently still living in Ankara. Hayes and Pliego agreed that Hayes and ALG would travel to Kentucky to visit extended family on April 6, 2014. The date of return was to be May 4, 2014. Instead, Hayes told Pliego that she would not be returning and intended to keep ALG with her in Kentucky. Currently, Hayes and ALG are residing in Kentucky pending resolution of this action, subject to agreed conditions. Docket No. 18.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Hayes moves for summary judgment, arguing that Spain is not ALG's habitual residence. Docket No. 25. She alleges that ALG was born in Kentucky and has never lived in Spain, spending a total of 46 days there over a series of four trips. She notes that the Convention seeks to remedy situations where the victim of an abduction "suffers the sudden upsetting of his stability, the traumatic loss of contact with the parent who has been in charge of his upbringing, the uncertainty and frustration which comes from the necessity to adapt to a strange language, unfamiliar cultural conditions, and unknown teachers and relatives." *Id.* She states that "the child's remaining with his mother, who has been his primary care provider since his birth, in the United States will not result in the manifestation of these concerns, but an order of return to Spain would do so in this case." *Id.* In response, Petitioner notes that his "burden at trial is only to show that the child's habitual residence is a contra ting country to the Hague Convention, not a specific country, i.e. Spain." Docket No. 36. Additionally, he argues that there are multiple genuine issues of material fact in dispute regarding ALG's habitual residence, any one of which precludes summary judgment. *Id.*

The International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610 (2000), codifies the Hague Convention on the Civil Aspects of International Child Abduction. "[A] court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute. . . . [T]he Hague Convention is generally intended to restore the pre-abduction status quo and to deter parents

3

from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063–64 (6th Cir.1996) (citations omitted).

A parent using the return remedy must first show that the child has been abducted or wrongfully retained in violation of custody rights. A parent can do this by showing that the laws of that country give him or her a right to custody, which is being impeded by the refusal to return the child. Second, the parent must show that the country to which return is sought is the child's "habitual residence." Third, the parent must invoke his or her rights under the convention and ICARA within one year. If these showings are made, a court is required to order the prompt and immediate return of the child unless one of several defenses is available.

The Sixth Circuit has held that a person can have only one habitual residence. *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir 1993). "On its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward." *Id.*. In *Friedrich*, the court found the case to be simple – because the child was born in Germany and resided there until he was brought to the United States, Germany was his habitual residence. *Id.* "[A] child's habitual residence is the nation where, at the time of their removal, the child was physically present long enough to allow acclimatization, and where this presence has a degree of settled purpose from the child's perspective." *Robert v. Tesson*, 507 F.3d 981, 993 (6th Cir. 2007).

This Court finds that there are multiple genuine disputes of material fact regarding ALG's habitual residence, and that it would be inappropriate to resolve these matters on summary judgment at this time. Thus, this motion is denied.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

5

IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment, Docket No. 25, is **DENIED**.